**DaleLyn LAPUH, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 01–3317.

United States Court of Appeals, Federal Circuit.

March 21, 2002.

DaleLyn Lapuh, of Garden Grove, CA, appeared pro se.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief was Martha B. Schneider.

Before CLEVENGER, RADER and PROST, Circuit Judges.

CLEVENGER, Circuit Judge.

DaleLyn Lapuh seeks review of the final decision of the Merit Systems Protection Board ("Board") dismissing her appeal of her nonselection for a position in the U.S. Postal Service ("agency") for lack of jurisdiction. *Lapuh v. Merit Sys. Prot. Bd.,*

No. SF3443010365–I–1 (May 31, 2001). The Veterans Employment Opportunity Act of 1998 ("Act"), Pub.L. No. 105–339, 112 Stat. 3182 (1998), grants the Board jurisdiction to hear appeals by individuals who are preference eligible and who assert that an agency has violated their rights under any statute or regulation relating to veterans' preference. 5 U.S.C. § 3330a(d)(1) (2000). In this case, Ms. Lapuh contends that she was denied her veterans' preference rights in 1994, and that such denial resulted in her not being hired by the agency in 1994. The Board decided that its jurisdiction under the Act does not extend to events that occurred before October 31, 1998, the effective date of the Act. Consequently, the Board dismissed Ms. Lapuh's appeal for lack of jurisdiction. For the reasons that follow, we affirm the Board's final decision.

I

Ms. Lapuh sat for an entrance examination conducted by the agency in 1994. She received a score of 80.90. At the time of the examination, Ms. Lapuh thought that she was entitled, as a veteran of the U.S. armed forces, to have an extra five points added to her grade. In some circumstances, veterans are indeed entitled to extra points that increase test scores, as a way of giving veterans preference in competing for federal employment. See 5 U.S.C. § 3309 (2000). Preference eligible persons are veterans of service in the armed forces or relatives thereof who meet statutory definitions set forth in 5 U.S.C. § 2108. It is undisputed that Ms. Lapuh is a preference eligible person. It further is undisputed that Ms. Lapuh in 1994 was entitled by statute to have an additional five points added to her examination score.

During the course of her 1994 entrance examination, Ms. Lapuh confronted the examination administrator, showing her evidence of military service upon which veterans' preference points are based. The administrator disagreed, arguing that Ms. Lapuh, a veteran of the Gulf War, was not entitled to additional points on her score as a matter of veterans' preference. On September 13, 1994, the agency sent Ms. Lapuh a Notice of Rating, which showed her test score of 80.90, but stated "Not applicable" under the heading of "Veterans Points." The Notice also stated that Ms. Lapuh's name was "now on the register," which put Ms. Lapuh in competition for job opportunities in the agency. The Notice further expressly stated that:

It is your responsibility to direct any inquiries, changes, or corrections, in writing, to the examination center identified at the top of this notice. Failure to keep the examination center informed of any changes or failure to respond to official correspondence would jeopardize your position on the register.

Ms. Lapuh did not write to the agency to complain that she had been wrongly denied an extra five points, as a matter of veterans' preference, on her 1994 test score.

On April 21, 1998, Ms. Lapuh took another entrance examination given by the agency. On May 8, 1998, she received a Notice of Rating for that examination, showing a grade of 79.20, and under the heading of "Veterans Points," showing five additional points. Her name was reentered on the register with her enhanced grade of 84.20. According to Ms. Lapuh, this new score entitled her to top priority in the hiring line, and on May 10, 1999, she was hired by the agency as a part time, flexible hours employee, a position she still occupies.

In March 2001, during conversation with co-workers, Ms. Lapuh learned that others had taken entrance examinations in 1994 and had been given veterans' preference

points. One such colleague told Ms. Lapuh that he had progressed in his employment to permanent status. Reflecting upon the information she received from her co-workers, Ms. Lapuh theorized that she had been wronged by the failure of the agency to award her veterans' preference points in 1994. She reasoned to herself that had she been given her veterans' preference rights in 1994, she would then have been hired by the agency, and that since then she too would have progressed from probationary status into permanent status, enjoying promotions and other benefits. Certain that she should by 2001 have been placed in a permanent position, she retained counsel to vindicate the abuse of her rights.

On April 6, 2001, Ms. Lapuh contacted the Board to determine what she should do. The Board advised her to contact the Department of Labor ("Department"), which she did. On the same day, the Department acknowledged in writing Ms. Lapuh's telephone inquiry. Noting that Ms. Lapuh seemed to be requesting assistance under the terms of the Act, the Department explained that "there is a short time frame from the time of the violation and the time to file a complaint." The Department enclosed a copy of the form upon which request for assistance under the Act should be made, and advised Ms. Lapuh to whom she should address her request.

On April 20, 2001, Ms. Lapuh through counsel wrote to the Department, enclosing the proper form and explaining in detail the grounds on which Ms. Lapuh thought her veterans' preference rights had been violated in 1994. For relief, Ms. Lapuh sought a hire and seniority date with the agency as of 1994, with an original appointment into a probationary status, followed in time by successful transition into regular full time employment. She sought such promotions as would have been available from 1994 to the present, along with all back pay and other monetary benefits, including interest thereon, and a payment of her attorney's fees in the amount of 40 percent of the total monetary value of all awards.

In an undated response to her April 20 submission, the Department declined to provide the relief she had sought. The Department explained its response as follows:

As stated during our conversation, it appears that though you were denied your veterans' preference during the exam in 1994, you could have requested a correction and credit by sending a copy of the DD–214 [the form attesting to Ms. Lapuh's military service that she had produced to the examination administrator in 1994] into the U.S. Post Office Exam Unit when you received a notice of rating which said no veterans Points had been given. Paragraph 4 gave you directions for addressing any questions or corrections. The VEOA [the Act] was not in effect at the time you took the exam in 94, but was in 1998.

On April 28, 2001, Ms. Lapuh filed her appeal with the Board, seeking redress for the failure of the agency to award her extra points on the 1994 examination.

## II

The Act, in section 3330a, establishes vindication rights for veterans who consider themselves the victims of violation of their veterans' preferences. The pertinent provisions of section 3330a are:

(a)(1) A preference eligible who alleges that an agency has violated such individual's rights under any statute or regulation relating to veterans' preference may file a complaint with the Secretary of Labor.

(2)(A) A complaint under this subsection must be filed within 60 days after the date of the alleged violation.

. . . .

(b)(1) The Secretary of Labor shall investigate each complaint under subsection (a).

. . . .

(d)(1) If the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board. . . .

5 U.S.C. § 3330a (2000).

Upon receipt of Ms. Lapuh's appeal to the Board, the Administrative Judge ("AJ") assigned to the case sent the parties an Acknowledgement Order. In that order, the AJ noted that Ms. Lapuh alleged a 1994 violation of her veterans' preference rights. Since Ms. Lapuh had not complained to the Department until April 20, 2001, the AJ noted that she appeared not to have complied with the requirement that she file her complaint with the Department within 60 days of the alleged violation. The AJ stated that the Board's jurisdiction depended upon a timely complaint having been filed with the Department. Also, the AJ noted that the Act "may not apply to violations that occurred prior to its October 31, 1998, effective date." The AJ reasoned that if the Act's provisions regarding Board jurisdiction were not retroactive to cover preenactment violations of veterans' preferences, then the Board would lack jurisdiction over Ms. Lapuh's appeal. The order invited a response from Ms. Lapuh.

Ms. Lapuh responded to the order, arguing that the untimeliness of her complaint to the Department should be excused under the doctrine of equitable tolling, because she had complained to the Department within 60 days of the time when she had learned from co-workers of the agency's violation of her rights in 1994. She did not address the retroactivity question.

In a subsequent status conference, the AJ explained that resolution of the tolling issue would require factual findings, and that the Board had not decided the question of whether the Board's authority under the act is retroactive. The AJ informed the parties that he would decide the appeal on the legal issue of retroactivity.

### III

■ In deciding the retroactivity issue, the AJ correctly noted that the starting place for statutory interpretation is the text of the statute itself. As the AJ stated, there is no provision in the Act that expressly grants the Board authority to adjudicate claims that arose before the statute took effect on October 31, 1998. On this point, the AJ cited, with a *"compare"* citation, *Williams v. Dep't of the Army*, 83 M.S.P.R. 109, 114 (1999). The *Williams* case did not involve the Board's authority to decide complaints initiated with the Department under the terms of the Act. Instead, that case involved the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which affords rights to veterans based on their status as veterans. Mr. Williams asserted that he had been denied employment in 1984 because of his status as a veteran. The alleged denial took place before the effective date of the provision of USERRA upon which Mr. Williams relied, October 13, 1994. Since Congress had expressly provided, in 38 U.S.C. § 4324(c), that the Board's jurisdiction to hear appeals under USERRA exists "without regard to whether the complaint accrued before, on, or after October 13,

1994," *id.*, the Board in *Williams* asserted jurisdiction over Mr. Williams's appeal. By citing to *Williams*, the AJ made the point that the Act, quite unlike the USER-RA, does not contain a clear statement by Congress that answers the question of retroactivity.

In addition, the AJ noted that if the Board's authority under section 3330a(d)(1) were retroactive, then compliance with the requirement of the mandatory 60–day notice to the Department would be impossible to achieve. Given both the lack of any indication in the statute that it should have retroactive effect and the inconsistency between retroactivity and the 60–day notice requirement, the AJ concluded that the Act should not be given retroactive effect in Ms. Lapuh's case. Her appeal was therefore dismissed for lack of Board jurisdiction. When Ms. Lapuh declined to obtain review by the full Board, the decision of the AJ became the final decision of the Board. Ms. Lapuh timely filed her petition for review in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9) (1994).

## IV

■ We may disturb a final decision of the Board only if we conclude that it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 7703(c) (2000). In this case, we are presented with a pure question of law, namely whether the Board's jurisdictional powers under 5 U.S.C. § 3330a(d)(1) apply retroactively to violations of veterans' preferences that occurred before the effective date of the Act.

The most useful part of the legislative history of the Act is found in Senate Report No. 105–340 ("Report"). The Report explains the need for a uniform redress provision pursuant to which veterans can seek adjudication of alleged violations of veterans' preferences. The Report also expressly states that the uniform redress mechanism in the Act is "modeled after the procedures established in the Uniformed Services Employment and Reemployment Rights Act of 1994." S.Rep. No. 105–340 at 16 (1998).

While it is true that the redress provisions of the Act concerning the Board are modeled after the USERRA redress provisions that employ the Board, Congress did not copy the USERRA provisions for the Act. Indeed, while Congress was considering the terms of the Act, it was simultaneously considering amendment of the Board review redress provisions of USER-RA. The Act became law on October 31, 1998. Only a few days later, on November 11, 1998, Congress amended USERRA to expressly provide that Board authority to resolve USERRA disputes is retroactive to disputes that arose before the effective date of USERRA. Since Congress intended to model the Act on USERRA, we think it telling on the retroactivity issue that Congress expressly chose to make USER-RA's Board review powers retroactive, while it did not make the same election for the Act.

■ Finally, we note that retroactivity is not favored in the law. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."). In *Landgraf,* the Supreme Court held that if a statute does not itself clearly prescribe the statute's proper reach, courts must resort to default rules to supply the proper reach. *Id.* at 280, 114 S.Ct. 1483. To assess whether a statute would have retroactive effect, the Supreme Court noted that statutes that "impose new duties with respect to transactions already completed" would

be retroactive, *id.,* and that the traditional presumption against retroactivity would govern, unless there is clear Congressional intent to the contrary, as in USERRA. Here, it is quite clear that the Act set out a new procedure for veterans to seek redress for violations of veterans' preferences. The aggrieved veteran must first seek relief from the Department, and must do so within 60 days of the alleged violation. Those requirements impose new duties with respect to the events of the past. Before the Act, a veteran had no duty to seek redress from the Department under any particular time constraint.

In sum, we think it clear that Congress did not intend the Act to have retroactive effect for redress of grievances through the Board. That Congress contemporaneously provided for such effect in USERRA is strong evidence that it did not intend to do so with the Act. Moreover, the structure of the Act itself falls into the cadre of *Landgraf* which disfavors retroactive effect.

## CONCLUSION

For the reasons set forth above, we hold that section 3330a(d)(1) does not confer jurisdiction on the Board to adjudicate claims of violation of veterans' preferences when the alleged violative acts occurred before the effective date of the Act. The final decision of the Board is therefore affirmed.

## COSTS

No costs.

*AFFIRMED.*