# United States Court of Appeals for the Federal Circuit

---

**SHIRLEY R. HICKS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2016-1091

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-15-0217-W-1.

---

Decided: March 22, 2016

---

SHIRLEY R. HICKS, Burksville, AL, pro se.

KATRINA LEDERER, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

---

Before MOORE, MAYER, and WALLACH, *Circuit Judges.*

MAYER, *Circuit Judge.*

Shirley R. Hicks appeals the final decision of the Merit Systems Protection Board ("board") dismissing her individual right of action ("IRA") appeal for lack of juris-

diction. *See Hicks v. Dep't of the Air Force*, No. AT-1221-15-0217-W-1, 2015 MSPB LEXIS 8111 (Sept. 25, 2015) ("*Board Decision*"). For the reasons discussed below, we affirm.

## BACKGROUND

In August 1989, Hicks, who was employed as a Secretary, GS-05, at Maxwell Air Force Base in Alabama, was removed from her position for failure to request leave in accordance with proper procedures and being absent without official leave. *See Hill v. Dep't of the Air Force*, 49 M.S.P.R. 271, 272 (1991).[1] Following an appeal to the board, Hicks' removal was mitigated to a sixty-day suspension. *Id.* On July 13, 1990, the Air Force effected a new removal action. Hicks once again appealed to the board, but in an initial decision an administrative judge affirmed the Air Force's removal action. Approximately one year later, Hicks filed a petition for review with the full board, but her petition was dismissed as untimely filed. On appeal, this court affirmed, explaining that Hicks had not "presented any explanation as to how her 'depression' prevented her from meeting the Board's filing requirements." *See Hill v. Merit Sys. Prot. Bd.*, No. 92-3509, 1993 U.S. App. LEXIS 4328, at *3 (Fed. Cir. Mar. 1, 1993) (reported in table format at 991 F.2d 808).

More than two decades later, in July 2014, Hicks contacted the U.S. Office of Special Counsel ("Special Counsel"), alleging that the Air Force had removed her in 1990 in retaliation for making protected disclosures. On August 27, 2014, the Special Counsel notified Hicks that it was terminating its investigation into her allegations. Soon thereafter, on October 18, 2014, Hicks filed an IRA appeal with the board. An administrative judge of the

---

[1] Hicks was formerly known as Shirley D. Hill. *See Board Decision*, 2015 MSPB LEXIS 8111, at *2 n.2.

board dismissed Hicks' appeal for lack of jurisdiction, concluding that she had "failed to nonfrivolously allege that she made a protected disclosure as described under 5 U.S.C. § 2302(b)(8)." The judge explained that in 1990, when Hicks was removed, filing an appeal with the board was not a "protected disclosure" under the Whistleblower Protection Act of 1989 ("WPA"), Pub. L. No. 101-12, 103 Stat. 16.

On appeal, the board affirmed. It acknowledged that the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112-199, 126 Stat. 1465, expanded its jurisdiction to cover IRA appeals alleging that an agency engaged in the prohibited personnel practices described in 5 U.S.C. § 2302(b)(9), including appeals alleging reprisal for filing a previous appeal with the board. *See Board Decision*, 2015 MSPB LEXIS 8111, at *7. The board concluded, however, that the WPEA did not apply retroactively to afford Hicks "an IRA appeal right based on retaliation that occurred more than [two] decades before the effective date of the WPEA." *Id.* at *8.

Hicks then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of a decision of the board is circumscribed by statute. We can set such a decision aside only if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Marino v. Office of Pers. Mgmt.*, 243 F.3d 1375, 1377 (Fed. Cir. 2001). Whether a new statute can be applied retroactively is a question of law that we review de novo. *See Lapuh v. Merit Sys. Prot. Bd.*, 284 F.3d 1277, 1281 (Fed. Cir. 2002).

Before it was amended in 2012, the WPA afforded certain federal employees the right to bring an IRA appeal when an agency engaged in any of the prohibited personnel practices described in section 2302(b)(8). *See Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1574–75 (Fed. Cir. 1996). Specifically, the WPA granted the board authority to order corrective action in cases in which an employee suffered reprisal for the disclosure of information which he or she reasonably believed evidenced a "violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). Significantly, however, the WPA did not provide the board with authority to order corrective action in cases involving reprisal for filing a previous appeal with the board. *See Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 690 (Fed. Cir. 1992) (explaining that the WPA, prior to its amendment, did not provide an employee with the right to bring an IRA appeal based on a claim of reprisal for making a disclosure protected under section 2302(b)(9)).

With the enactment of the WPEA, Congress significantly increased the whistleblowing protections available to federal employees. *See* S. Rep. No. 112-155, at 1 (2012), *as reprinted in* 2012 U.S.C.C.A.N. 589, 589 (explaining that the WPEA was intended "to strengthen the rights of and protections for federal whistleblowers so that they can more effectively help root out waste, fraud, and abuse in the federal government"). The WPEA expanded the IRA appeal right provided under 5 U.S.C. § 1221(a) to include claims for corrective action based not only on the prohibited personnel practices described in section 2302(b)(8), but also for those described in sections 2302(b)(9)(A)(i), (B), (C), and (D). *See* WPEA § 101(b)(1), 126 Stat. 1465–66; *see also* 5 U.S.C. § 1214. Of relevance here, under the WPEA an aggrieved employee now has the right, under certain circumstances, to seek corrective

action from the board when he or she suffers reprisal as a result of filing a previous appeal with the board. *See* 5 U.S.C. § 2302(b)(9)(A)(i) (prohibiting an agency from retaliating against an employee for "the exercise of any appeal, complaint, or grievance right" related to whistleblowing).

As the board correctly determined, however, the WPEA does not apply retroactively to provide a basis for the exercise of jurisdiction over Hicks' appeal alleging that she was removed in 1990 in reprisal for filing a previous appeal. *See Board Decision*, 2015 MSPB LEXIS 8111, at *7–8; *see also Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261, 266–67 (Fed. Cir. 2015) (assuming, but not deciding, that the expanded IRA appeal rights provided by the WPEA did not apply retroactively to cover alleged reprisal for disclosures made during 2011 grievance proceedings); *Hooker v. Dep't of Veterans Affairs*, 120 M.S.P.R. 629, 638–39 (2014) (concluding that the WPEA did not apply retroactively to supply jurisdiction over an employee's claim of reprisal for engaging in activities protected under section 2302(b)(9)). Thus, even assuming *arguendo* that Hicks' claim of reprisal for filing a previous board appeal falls within the scope of section 2302(b)(9)(A)(i), the WPEA does not apply retroactively to provide the board with authority to review an agency removal action which occurred more than two decades before its enactment.

"Retroactivity is not favored in the law," and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Accordingly, we will construe a statute to avoid retroactivity unless there is clear evidence that Congress intended otherwise. *See Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997) ("[C]ases where this Court has found truly 'retroactive' effect ade-

quately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation."); *see also Landgraf*, 511 U.S. at 265 ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." (footnote omitted)); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1364 (Fed. Cir. 2012) ("An Act must clearly indicate its retroactive application.").

In determining the temporal reach of a particular statute, the "starting place . . . is the text of the statute itself." *Lapuh*, 284 F.3d at 1280. Here, there is nothing in the text of section 101(b)(1) of the WPEA suggesting that Congress intended for its expanded appeal rights to apply to agency actions occurring long before its effective date. To the contrary, Congress specifically provided, with certain exceptions not relevant here, that the WPEA would become effective on December 27, 2012, thirty days after it was signed into law. *See* WPEA § 202, 126 Stat. 1476; *Landgraf*, 511 U.S. at 257 ("A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." (footnote omitted)); *see also AT&T Corp. v. Hulteen*, 556 U.S. 701, 712–13 (2009) (concluding that a statute did not apply retroactively where Congress provided that certain provisions of the statute would become effective on the date of enactment and others would become effective six months later). A statement in the WPEA's legislative history suggests that at least some of its provisions could apply retroactively to cover appeals pending on or after the Act's effective date.[2] That statement, however, is insufficient,

---

[2]   The committee report accompanying the bill that was ultimately enacted as the WPEA stated:

standing alone, to override the unequivocal statutory language and demonstrate a "clear intent" that the WPEA apply retroactively to provide the board with jurisdiction over agency removal actions occurring long before its enactment. *Landgraf*, 511 U.S. at 272–73 ("Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits."); *see also Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004) ("If the statute is unambiguous, our inquiry is at an end; we must enforce the congressional intent embodied in that plain wording."); *Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004) ("The language of the statute at issue in this case is clear and unambiguous, and absent extraordinary circumstances our inquiry must end here.").

The presumption against retroactive application of a statute applies with special force in situations in which such application "would have genuinely 'retroactive'

---

The Committee expects and intends that the Act's provisions shall be applied in [Special Counsel], [board], and judicial proceedings initiated by or on behalf of a whistleblower and *pending on or after [the] effective date*. Such application is expected and appropriate because the legislation generally corrects erroneous decisions by the [board] and the courts; removes and compensates for burdens that were wrongfully imposed on individual whistleblowers exercising their rights in the public interest; and improves the rules of administrative and judicial procedure and jurisdiction applicable to the vindication of whistleblowers' rights.

S. Rep. No. 112-155, at 52 (emphasis added).

effect," *Landgraf*, 511 U.S. at 277, i.e., where "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *id.* at 280; *see also Princess Cruises v. United States*, 397 F.3d 1358, 1366–67 (Fed. Cir. 2005) (stating that retroactive application of a new law is disfavored because it upends settled expectations). Under the circumstances presented here, retroactive application of section 101(b)(1) of the WPEA would significantly increase the government's potential liability for past conduct. As discussed previously, prior to the enactment of the WPEA, the board had no authority to order corrective action in cases involving a claim of reprisal for filing a previous appeal. *See Hooker*, 120 M.S.P.R. at 639 (explaining that although prior to the WPEA the board could consider an employee's allegation of a violation of 5 U.S.C. § 2302(b)(9) as a viable affirmative defense, it "lacked jurisdiction over such allegations raised in an IRA appeal, and therefore could not order corrective action in such cases"). Under the WPEA, however, when an agency retaliates against an employee for filing a previous appeal related to whistleblowing, the board is empowered to order such corrective action as it deems appropriate, 5 U.S.C. § 1221(e)(1), including restoring the employee, "as nearly as possible, [to] the position the individual would have been in had the prohibited personnel practice not occurred," and awarding "back pay and related benefits, medical costs incurred, travel expenses, any other reasonable and foreseeable consequential damages, and compensatory damages," *id.* § 1221(g)(1)(A). *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994) (concluding that a provision of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, should not be applied retroactively because it "create[d] liabilities that had no legal existence before the Act was passed").

We have previously confronted—but rejected—arguments that a newly enacted statute can be applied retroactively to expand the scope of the board's jurisdiction. In *Lapuh*, we held that although the Veterans Employment Opportunity Act of 1998, Pub. L. No. 105-339, 112 Stat. 3182, provided the board with jurisdiction over certain appeals alleging violations of veterans' preference rights, it did not apply retroactively to supply jurisdiction over violations occurring prior to the statute's effective date. 284 F.3d at 1280–82. Similarly, in *Caddell v. Department of Justice*, we held that although a 1994 amendment to the WPA expanded the types of "personnel actions" over which the board could exercise jurisdiction, that amendment did not apply retroactively to provide jurisdiction over an agency action that occurred several years prior to the amendment's effective date. 96 F.3d 1367, 1370–71 (Fed. Cir. 1996). Here, likewise, we conclude that section 101(b)(1) of the WPEA cannot be applied retroactively to supply a predicate for the exercise of jurisdiction over Hicks' claim that the Air Force removed her in 1990 in retaliation for filing a previous appeal.

We emphasize, however, that our holding is a narrow one. While we conclude that, under the particular circumstances presented here, section 101(b)(1) of the WPEA does not operate retroactively to supply board jurisdiction over Hicks' appeal, we express no view on whether other provisions of the WPEA can be given retroactive effect.[3]

---

[3]  For example, we need not—and therefore do not—decide whether the board has correctly concluded that the WPEA's "clarification" of the term "disclosure" applies retroactively, *see Day v. Dep't of Homeland Sec.*, 119 M.S.P.R. 589, 598 (2013), but that the WPEA's provision allowing for the award of compensatory damages does not, *see King v. Dep't of the Air Force*, 119 M.S.P.R. 663, 669–75 (2013).

*See Landgraf*, 511 U.S. at 280 (explaining that "there is no special reason to think that all the diverse provisions of [an] Act must be treated uniformly" for retroactivity purposes).

CONCLUSION

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

**AFFIRMED**