NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ADELLCHO N. HANSEN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF THE ARMY,**
*Intervenor*

---

2017-2025

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-17-0033-W-1.

---

Decided: August 15, 2018

---

MICHAEL WILSON MACOMBER, Tully Rinckey PLLC, Albany, NY, argued for petitioner.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by KATHERINE M. SMITH.

ISAAC B. ROSENBERG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER, HILLARY STERN.

---

Before MOORE, WALLACH, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Petitioner Dr. Adellcho N. Hansen seeks review of a final decision of the Merit Systems Protection Board ("MSPB") affirming an administrative judge's ("AJ") dismissal of his individual right of action ("IRA") appeal for lack of jurisdiction. *See Hansen v. Dep't of the Army*, No. DC-1221-17-0033-W-1, 2017 WL 1063357 (M.S.P.B. Mar. 15, 2017) (J.A. 1–20).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

Beginning in 2010, the U.S. Army ("Army") appointed Dr. Hansen to the position of a GS-15 Public Health Advisor in its Combined Joint Medical Branch ("CJMED") in Kabul, Afghanistan. J.A. 249; *see* J.A. 38. Dr. Hansen's original term appointment was set to expire in November 2011, *see* J.A. 249; however, on multiple occa-

---

[1] The AJ's initial decision, *see* J.A. 1–20, became final on April 19, 2017, when Dr. Hansen did not file a petition for review, *see* 5 C.F.R. § 1201.113 (2018) (providing "[t]he initial decision of the [AJ] will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "(a) . . . any party files a petition for review"); J.A. 15. Therefore, we refer to the Initial Decision as the MSPB's Final Decision.

sions, the Army extended Dr. Hansen's term appointment, *see, e.g.*, J.A. 103, 105, 107, the last of which expired in September 2015, J.A. 50. Relevant here, starting in February 2015, Colonel Kathryn Tate became Dr. Hansen's second-level supervisor, and she appointed Lieutenant Colonel Jonathan Ruwe as Dr. Hansen's first-level supervisor. J.A. 146.

In November 2015, Dr. Hansen filed a complaint with the Office of Special Counsel ("OSC"), J.A. 52–57, alleging that the Army, specifically Col. Tate, retaliated against him on account of "blowing the whistle on C[ol.] Tate['s ] in[]competency and poor leadership," and as a result his appointment was not extended, J.A. 55. In October 2016, the OSC closed Dr. Hansen's file without taking action after he failed to provide additional information necessary to evaluate his claim. J.A. 41.

Dr. Hansen timely filed an IRA appeal with the MSPB, claiming, inter alia, that the Army retaliated against him for his allegedly protected disclosures, thereby violating the Whistleblower Protection Act ("WPA"), Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified as amended by Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112–199, 126 Stat. 1465 in scattered sections of 5 U.S.C.). J.A. 146; *see* J.A. 142–53. In October 2016, the AJ issued a show cause order advising, inter alia, that there was a question as to jurisdiction. J.A. 154–62. Both parties responded with briefing and appended exhibits. J.A. 71–141, 178–252. Dr. Hansen alleged that Col. Tate retaliated against him by, inter alia, threatening reassignment and allowing his term appointment to expire, J.A. 148, 151, due to several protected disclosures made by Dr. Hansen during the term of his employment, *see* J.A. 122–24. Specifically, Dr. Hansen alleged that he disclosed to: Col. Tate that her reassignment of certain staff members' duties and site location had a "negative impact" on the Army's health care mission (Disclosure 1); Col. Tate that his supervision

by lower-ranking Lt. Col. Ruwe violated Army regulations (Disclosure 2); Col. Tate that Lt. Col. Ruwe verbally and sexually harassed him (Disclosure 3); other Army officials that Col. Tate engaged in mismanagement and abused her authority when she replaced a physician assistant with herself to treat the President of Afghanistan (Disclosure 4); another Army colonel all the incidents of which he had complained in the previous four disclosures (Disclosure 5); the same Army colonel that Col. Tate decided to reassign Dr. Hansen to New Kabul Compound ("NKC") in contravention of the medical mission (Disclosure 6); and Col. Tate that he continued to disagree with her decision to reassign him to NKC (Disclosure 7). *See* J.A. 122–24.[2]

After holding a telephonic status conference, the AJ issued an order and summary of status conference, J.A. 163–77, finding that, inter alia, Dr. Hansen failed to establish a non-frivolous allegation that he made a protected disclosure, J.A. 169–74. The Order further advised Dr. Hansen of his right to file any additional evidence or responses within a specified timeframe, J.A. 176, and Dr. Hansen filed a response, J.A. 21–70.

In March 2017, the MSPB ultimately "dismissed [the appeal] for lack of jurisdiction." J.A. 1. In so holding, it found that, for Disclosures 1–7, Dr. Hansen failed to make any non-frivolous allegation that he engaged in whistle-blowing activity by not making any protected disclosure

---

[2]　　Disclosure 8, which was an alleged statement by Dr. Hansen to the inspector general reciting, inter alia, his previous seven disclosures, is not on appeal. *See* Pet'r's Br. 14−15 (making arguments with respect to Disclosures 1−7).

under 5 U.S.C. § 2302(b)(8) (2012).[3] *See* J.A. 7–12 (analyzing each disclosure separately).

DISCUSSION

I. Standard of Review and Legal Standard

We review whether the MSPB has jurisdiction over an appeal de novo. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). "Findings of fact underlying the [MSPB's] jurisdictional decision are reviewed for substantial evidence." *Bledsoe v. Merit Sys. Prot. Bd.*, 659 F.3d 1097, 1101 (Fed. Cir. 2011) (internal quotation marks and citation omitted). We will uphold a decision of the MSPB unless it is, inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the [MSPB]'s decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Congress has provided federal employees the right to seek corrective action from the MSPB whenever a personnel action is taken in retaliation for certain whistleblowing activities. *See* 5 U.S.C. § 1221(a). Pursuant to 1221(a), the MSPB has jurisdiction over whistleblower cases if the employee has exhausted administrative remedies before the OSC and "makes 'non-frivolous allegations' that (1) he engaged in whistleblowing activity by making a protected disclosure under[, inter alia,] 5

---

[3] Section 2302(b)(8)(A) defines a protected disclosure as "any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences—(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

U.S.C. § 2302(b)(8)[;] and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)[(2)(A)]." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *see* 5 U.S.C. §§ 1214(a)(3), 1221; *see also Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1320 (Fed. Cir. 2016) (explaining additional types of protected disclosures under the WPEA).

We have made clear that the MSPB must "separate the issue of jurisdiction from that of the merits of a petitioner's case." *Piccolo v. Merit Sys. Prot. Bd.*, 869 F.3d 1369, 1370 (Fed. Cir. 2017) (internal quotation marks and citation omitted). If a petitioner makes a non-frivolous allegation of MSPB jurisdiction, she is entitled to a hearing on the jurisdictional question. *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc). A non-frivolous allegation is one that "(1) [i]s more than conclusory; (2) [i]s plausible on its face; and (3) [i]s material to the legal issues in the appeal." 5 C.F.R. § 1201.4(s); *see Piccolo*, 869 F.3d at 1370 (emphasizing that non-frivolous allegations are those "that are not vague, conclusory, or facially insufficient . . . and that the petitioner reasonably believes to be true" (internal quotation marks, alterations, and citation omitted)).

"[A] communication concerning policy decisions that lawfully exercise discretionary authority" is not a protected whistleblower disclosure, unless the employee providing the disclosure "reasonably believes" that the disclosure separately constitutes a protected disclosure of one of the categories of wrongdoing listed in, inter alia, § 2302(b)(8)(A). 5 U.S.C. § 2302(a)(2)(D); *see Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) ("The WPA is not a weapon in arguments over policy . . . ."); *see also Standley v. Merit Sys. Prot. Bd.*, 715 F. App'x 998, 1001–03 (Fed. Cir. 2017) (affirming a dismissal of an IRA appeal where multiple disclosures consisted of a fairly debatable policy dispute); *O'Donnell v. Merit Sys. Prot.*

*Bd.*, 561 F. App'x 926, 930 (Fed. Cir. 2014) (affirming dismissal of an IRA appeal where the disclosures consisted of policy disputes over an agency's "discretionary authority").

The test to determine if an employee has a reasonable belief that his disclosure evidences a wrongdoing listed in § 2302(b)(8)(A), such as, for example, abuse of authority, asks whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the [G]overnment evidence" such wrongdoing. *Lachance*, 174 F.3d at 1381. Relevant here, "an abuse of authority [is] an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *Doyle v. Dep't of Veterans Affairs*, 273 F. App'x 961, 964 (Fed. Cir. 2008) (internal quotation marks and citation omitted).

## II. The MSPB Lacks Jurisdiction over Dr. Hansen's Appeal for All Disclosures Except Disclosures 4 and 5

The issue on appeal is whether the MSPB erred in concluding that it lacked jurisdiction to consider Dr. Hansen's IRA appeal due to failure to non-frivolously allege violations of the WPEA. *See* Pet'r's Br. 16–30; Resp't's Br. 19–32.[4] In dismissing Dr. Hansen's appeal as to Disclosures 1–7 for failure to allege a protected disclosure under § 2302(b)(8), the MSPB analyzed each disclosure separately and found the disclosures as alleged were either lacking specificity, conclusory, debatable policy

---

[4] The parties do not contest that Dr. Hansen has exhausted his OSC remedies. *See generally* Pet'r's Br.; Resp't's Br.

disputes with the Army's staffing decisions, outside of the IRA appeal context, or a combination of the above. *See* J.A. 3, 7–12.[5]

Dr. Hansen argues his disclosures were protected under the WPEA because he reasonably believed the disclosed conduct, "on their own and in the aggregate[,] were inappropriate and constitute[d] gross mismanagement," Pet'r's Br. 19, and that the disclosed conduct relating to "staff restructuring, threatening to transfer Dr. Hansen, and [Col. Tate] placing herself in a position for which she is not qualified" constituted an abuse of authority, *id.* at 25; *see* Oral Arg. at 29:10–11, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-2025.mp3 (clarifying by counsel for Dr. Hansen that "[Disclosure 4] was only pled as an abuse of authority"). We agree in a limited manner with Dr. Hansen regarding Disclosure 4, and to the extent the facts alleged in Disclosure 4 impact Disclosure 5, but otherwise disagree. We discuss the disclosures in turn below.

### A. Disclosures 1–4 and 6–7

The MSPB did not err in finding Dr. Hansen failed to make non-frivolous allegations with regard to Disclosures 1–3 and 6–7 that he reasonably believed his disclosures are protected under § 2302(b)(8)(A) relating to Col. Tate's management based on staffing assignments. Decisions related to staffing responsibilities and assignments are not protected disclosures because they, instead, relate to "policy decisions that lawfully exercise discretionary

---

[5]    Because the MSPB found that none of Disclosures 1–7 were protected under § 2302(b)(8), it did not analyze whether the disclosures were "a contributing factor" in the Army's decision not to extend Dr. Hansen's term employment under § 2302(a)(2)(A). *See* J.A. 7–12.

authority." 5 U.S.C. § 2302(a)(2)(D); *see O'Donnell*, 561 F. App'x at 930 ("[A]n exercise of discretionary authority is not a violation of the law." (internal quotation marks omitted)). We have held that "[d]iscussion and even disagreement with supervisors over job-related activities is a normal part of most occupations." *Willis v. Dep't of Agric.*, 141 F.3d 1139, 1143 (Fed. Cir. 1998); *see id.* (affirming the MSPB's lack of jurisdiction because an employee's disclosures objecting to the criticisms of his supervisor were not protected disclosures within the purview of the WPA).

Dr. Hansen's allegations regarding Disclosures 1–3 and 6–7 are conclusory and, at most, amount to a dispute with a supervisor's discretionary authority that a disinterested observer could not reasonably believe evidence wrongdoing listed in § 2302(b)(8)(A). For example, in Disclosure 1, Dr. Hansen critiques Col. Tate's management decisions to relocate a colonel to a new infantry unit, and reassign various contractors, lieutenant colonels and majors to her support staff. *See* J.A. 122. Yet, Dr. Hansen neither specifies nor cites evidence of the parameters of the Army "health care mission" of which he asserts Col. Tate ran afoul, nor specifies any authority that she violated or identifies a quantifiable harm. *See* J.A. 122. In Disclosure 3, Dr. Hansen alleges a supervisor refused to allow him to relocate his desk, and verbally accosted him. J.A. 122.[6] While harassment may constitute an abuse of

---

[6] Unlike the other disclosures, Disclosure 3 also alleges sexual harassment. *See* J.A. 3, 122. Disclosure 3's allegations relating to sexual harassment are covered exclusively by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e−2(a)(1) (2012), with "investigative and remedial measures available . . . through the E[qual] E[mployment] O[pportunity] C[ommission]," and are therefore not

authority under certain circumstances, Dr. Hansen has not alleged any facts that would suggest that Lt. Col. Ruwe acted in a manner that would satisfy the definition of abuse of authority. Disclosures 6 and 7 concern disagreement with a potential transfer to NKC, and are likewise vague and conclusory as to why that discretionary decision was a "threat[]" or would on its own constitute "mismanagement and abuse of power." J.A. 124; *cf.* Pet'r's Br. 24 (summarizing Dr. Hansen's argument on appeal that mismanagement by Col. Tate "culminated in her undermining [the CJMED's medical] mission . . . in the most substantial way possible, by seeking to remove Dr. Hansen"). It is clear that Dr. Hansen personally disagreed with Col. Tate's staffing "desire" to transfer him. *See* J.A. 81 (providing email from Col. Tate to Dr. Hansen stating "I assume that if you are extended then you will transfer to NKC as that is where I . . . need your skills as a physician advisor . . . . [W]ith the loss of the physician from the team at NKC this move is critical for the long-term advising effort"); J.A. 80 (responding in an email to Col. Tate that "I have no inten[t]ion to move to NKC. There are other options to cover the lack of [a] physician at NKC [and] I still can cover the clinical aspect of NKC team . . . as I'm doing now"). However, without evidence as to how such a transfer request to fill a vacant position was either a "threat[]" to the employee or could constitute "mismanagement and abuse of power," J.A. 124, the MSPB properly found these conclusory allegations to be frivolous, *see, e.g.*, *White v. Dep't of Air Force*, 391 F.3d 1377, 1381 (Fed. Cir. 2004) ("Mere differences of opinion between an employee and his agency

---

considered protected whistleblowing activity under § 2302(b)(8), *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 691–92 (Fed. Cir. 1992).

superiors as to the proper approach to a particular problem or the most appropriate course of action do not rise to the level of gross mismanagement.").

Disclosure 2, while pled with more specificity than the previously discussed disclosures, amounts to conclusory allegations of, at best, a policy dispute under § 2302(a)(2)(D). Specifically, Disclosure 2 alleges that Col. Tate abused her authority, in violation of Army Regulation 690-400, by assigning a lower ranking official, Lt. Col. Ruwe, to supervise Dr. Hansen, causing "delayed payments" to Dr. Hansen. J.A. 24, 122. However, while Dr. Hansen cites a general Army regulation in passing, as the AJ aptly noted, *see* J.A. 2, Army Reg. 690-400 sets forth the Army's voluminous "Performance Evaluation System" for civilian employees, *see* Army Reg. 690-400, Total Army Performance Evaluation System, Ch. 4302. Dr. Hansen cites no specific section or even subsection in Army Reg. 690-400, nor could we find one, addressing military personnel supervising civilian personnel, or how to evaluate ranking requirements for supervisors. *See generally* Pet'r's Br. Further, Dr. Hansen makes conclusory statements and points to no evidence of record that would allow a disinterested person to come to the conclusion that assignment of Lt. Col. Ruwe was an abuse of authority or gross mismanagement on the part of Col. Tate because Dr. Hansen does not discuss with requisite specificity how his rights were "adversely affect[ed]" by the delay he alleges occurred with his paycheck, as is required to make a non-frivolous allegation of a protected disclosure. *Doyle*, 273 F. App'x at 964.

Disclosure 4 similarly criticizes Col. Tate's staffing decision during a particular event, specifically, Col. Tate's substitution of a "well-trained" physician's assistant for herself, a "not qualified" individual only trained as "a midwife," to serve on Dr. Hansen's medical team attending to the President of Afghanistan. J.A. 123. According to Dr. Hansen, this constitutes a protected disclosure

evincing how Col. Tate abused her authority because Col. Tate was "disregard[ing] medical ethics in appointing herself to a nursing position for which she was not quali-fied" and "jeopardizing the entire mission and calling into question Dr. Hansen's credibility." Pet'r's Br. 25. We note that Dr. Hansen provides no further explanation of what workplace duties or responsibilities the visit re-quired, no details concerning minimum physician assis-tant-trained qualifications, and ultimately no discussion of *how* "medical care afforded to the President of Afghani-stan" was at risk to support this disclosure being non-frivolous. *Id.* at 21. *See generally id.* Although close, accepting as true Dr. Hansen's allegations that Colonel Tate was only a midwife and was not qualified to serve as a nurse to assist in treating the President suffices at this stage to meet the non-frivolous allegation standard re-garding an abuse of authority.[7]

To the extent that Dr. Hansen argues this incident constitutes gross mismanagement, *see* Pet'r's Br. 18, his claims amount to a debatable dispute with management. Dr. Hansen further alleges that Colonel Tate contaminat-ed a sterile area while treating the president of Afghani-stan. J.A. 46. Assuming this is true, it still does not establish gross mismanagement, which requires "such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people." *White*, 391 F.3d at 1381–82. Col. Tate, like Dr. Hansen, was also responsible for modernizing the Afghanistan healthcare system, and was also responsible for supervising Dr.

---

[7]    We note that Air Force Instruction 44-119 (16 Au-gust 2011) appears to require that certified nurse mid-wives are also registered nurses. We leave to the MSPB any potential factual disputes regarding Colonel Tate's actual qualifications.

Hansen. *See* J.A. 10. Even if she made a mistake in the course of performing her duties by contaminating a sterile area, that alone is not sufficient to constitute gross mismanagement. Dr. Hansen does not explain the role of the physician's assistant or why the physician's assistant was a necessary part of the treatment team. Indeed, given that Col. Tate served as Dr. Hansen's supervisor, it seems reasonable for Col. Tate to be present during the treatment of Afghanistan's leaders.

## B. Disclosure 5

Dr. Hansen avers that "[the AJ] erred by failing to analyze Disclosure 5 as a separate and distinct disclosure" because the disclosure of "the *aggregate effect* of [Col.] Tate's numerous abuses of authority" constitutes a protected disclosure. Pet'r's Br. 26 (emphasis added) (capitalization modified). Having considered each of the allegations found in Disclosures 1–3 as separately constituting unreviewable policy concerns, we hold that Dr. Hansen's "aggregate theory," even if it might be a valid legal theory, fails as a matter of fact. The one potential surviving issue (Disclosure 4) has no other claim with which to aggregate. Because, however, it is barely conceivable that Dr. Hansen is arguing that the alleged facts of Disclosure 4 stand alone as a claim in Disclosure 5, we also remand solely for a determination whether the allegations of Disclosure 4, if factually accurate, would justify a claim under Disclosure 5.

## C. Dr. Hansen's Aggregate Theory

Dr. Hansen's "aggregate affect" theory relating generally to Disclosures 1–7 fares no better. *See* Pet'r's Br. 25 ("[Col.] Tate's numerous decisions, including staff restructuring, threatening to transfer Dr. Hansen, and placing herself in a position for which she is not qualified . . . jeopardized the [Army's] mission . . . in the Afghanistan healthcare system."). Dr. Hansen fails to cite any precedent, *see id.* at 25–30, nor do we find any, sup-

porting his theory that aggregating several disclosures related to policy disputes somehow transforms the individual disclosures into something protected under § 2302(b)(8), *see Lachance*, 174 F.3d at 1381 ("[T]he proper test is . . . could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the [G]overnment evidence [a § 2302(b)(8) violation].").

## CONCLUSION

We have considered Dr. Hansen's remaining arguments and find them unpersuasive. We affirm the Final Decision of the Merit Systems Protection Board as to all disclosures except for Disclosures 4 and 5. We reverse and remand Disclosures 4 and 5 solely on the issue of Dr. Hansen's alleged abuse of authority premised on whether Col. Tate is a registered nurse. Accordingly, the Final Decision of the Merit Systems Protection Board is

### AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

## COSTS

No costs.