# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

SHARON HELMAN,

      Appellant,

    v.

DEPARTMENT OF VETERANS
   AFFAIRS,

      Agency.

DOCKET NUMBER
DE-0707-15-0091-M-1

DATE: June 27, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Debra L. Roth, Esquire, and James P. Garay Heelan, Esquire, Washington, D.C., for the appellant.

Bradley Flippin, Nashville, Tennessee, for the agency.

Hansel Cordeiro, Esquire, and W. Iris Barber, Washington, D.C., for the agency.

Jeffrey T. Reeder, Esquire, Dallas, Texas, for the agency.

Sean A. Safdi, Denver, Colorado, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1     This case is before the Board on remand from the U.S. Court of Appeals for the Federal Circuit for review of the administrative judge's decision affirming the appellant's removal.  For the reasons discussed below, we AFFIRM the decision of the administrative judge.

**BACKGROUND**

¶2     The appellant was employed as the Director of the Phoenix Veterans Affairs (VA) Health Care System.  On May 30, 2014, the agency's Deputy Chief of Staff notified the appellant in writing of a proposal to remove her based on a charge of failure to provide oversight.  *Helman v. Department of Veterans Affairs*, MSPB Docket No. DE-0707-15-0091-J-1, Initial Appeal File (IAF), Tab 18 at 29-31.  However, no final action was taken regarding the May 2014 proposed removal, and the agency later rescinded that proposal.  *Id.* at 27.

¶3     The Veterans Access, Choice, and Accountability Act of 2014 (Choice Act), Pub. L. No. 113-146, 128 Stat. 1754, was signed into law on August 7, 2014.  Section 707 of the Choice Act, which was codified at 38 U.S.C. § 713, authorized the Secretary of Veterans Affairs to remove senior executives "if the Secretary determines the performance or misconduct of the individual warrants such removal."  128 Stat. at 1798.  Section 707 provided that actions taken under its authority could be appealed to the Board, but such appeals had to be filed within 7 days.  *Id.* at 1799.  Section 707 required the Board to assign such appeals to an administrative judge, who was required to issue a decision within 21 days.  *Id.*  Section 707 provided that the decision of the administrative judge in such an appeal "shall be final and shall not be subject to any further appeal."  *Id.*  The Board issued regulations, effective August 19, 2014, governing the adjudication of appeals under section 707 of the Choice Act.  5 C.F.R. part 1210.

¶4     On November 10, 2014, Deputy Secretary Sloan Gibson informed the appellant in writing of a pending action to remove her from Federal service based

on charges of lack of oversight, conduct unbecoming a senior executive, and failure to report gifts. IAF, Tab 1 at 9-16. The Deputy Secretary's notice informed the appellant that the pending action was being taken pursuant to section 707 of the Choice Act, and that she had 5 business days after receipt of the notice to submit a written response. *Id.* at 12-13. The appellant, through counsel, responded in writing to the notice on November 17, 2014. *Id.* at 17-30. On November 24, 2014, the Deputy Secretary informed the appellant in writing of his decision to remove her. *Id.* at 31-33.

¶5    The appellant filed a Board appeal of her removal on December 1, 2014. IAF, Tab 1. She requested a hearing. *Id.* at 2. During the processing of her appeal, the appellant raised a claim of harmful procedural error. IAF, Tab 13. At the prehearing conference, the appellant withdrew her hearing request and asked for a decision on the written record. IAF, Tab 66 at 1. On December 22, 2014, the administrative judge issued a decision affirming the appellant's removal. IAF, Tab 75. He found that the agency failed to prove any of the specifications of lack of oversight, *id.* at 13-32, but that it proved both specifications of conduct unbecoming a senior executive, *id.* at 32-42, and both specifications of failure to report gifts, *id.* at 42-51. He further found that the appellant failed to prove that she was denied due process, *id.* at 51-56, or that the agency committed harmful procedural error, *id.* at 56-57. Finally, he found that the appellant had not overcome the presumption that the penalty of removal was reasonable. *Id.* at 57-61.

¶6    The appellant filed a motion for an extension of time to file a petition for review of the administrative judge's decision. IAF, Tab 78. In response, the Clerk of the Board informed the appellant that, because section 707 of the Choice Act made the administrative judge's decision final and not subject to any further appeal, the Board would not be taking any further action on her appeal. IAF, Tab 79.

¶7 The appellant then sought review before the U.S. Court of Appeals for the Federal Circuit. The court held that the finality language in section 707 of the Choice Act did not prevent it from reviewing constitutional claims. *Helman v. Department of Veterans Affairs*, 856 F.3d 920, 926 (Fed. Cir. 2017). The court further held that the finality language in section 707 violated the Appointments Clause by giving Board administrative judges the authority to issue final decisions without the possibility of review by the members of the Board. *Id.* at 928-29. To remedy that violation, the court remanded the case to the Board for it to review the administrative judge's decision. *Id.* at 938.

¶8 Shortly after the Federal Circuit remanded this appeal to the Board, the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (VA Accountability Act), Pub. L. No. 115-41, 131 Stat. 862, was signed into law on June 23, 2017. Section 201 of the VA Accountability Act amended 38 U.S.C. § 713 in part to provide that a senior executive who is removed by the Secretary under that section may contest that action through an internal grievance procedure rather than before the Board, as provided by the provision in effect at the time this appeal was filed. 131 Stat. at 868. Section 201 provides that a grievance decision, or the decision of the Secretary if no grievance is filed, may be subject to judicial review. *Id.* Section 201 does not provide for Board review of the Secretary's actions against senior executives.

¶9 On remand from the Federal Circuit, the Board afforded the appellant the opportunity to raise those arguments she could have raised in a petition for review. *Helman v. Department of Veterans Affairs*, MSPB Docket No. DE 0707-15-0091-M-1, Remand File (RF), Tab 2 at 2. In her submission, the appellant argues that the administrative judge erred in rejecting her due process claim and that there is new and material evidence that supports that claim. RF, Tab 8 at 19-30. She also argues that the agency committed harmful procedural error.

*Id.* at 30. Finally, she argues that the penalty of removal was unreasonable.[2] *Id.* at 31-35.

¶10 In response to the appellant's submission, the agency first argues that the VA Accountability Act should be applied to the present case and that it deprives the Board of jurisdiction over this appeal. RF, Tab 11 at 7-11. As to the merits of the appellant's arguments, the agency argues that the administrative judge properly rejected the appellant's due process and harmful procedural error claims, *id.* at 11-24, and that the appellant failed to show that the penalty was unreasonable, *id.* at 24-27. The agency also submits evidence that was not presented to the administrative judge.[3] *Id.* at 29-41.

¶11 The appellant has also filed a Notice of New Legal Authority regarding the Federal Circuit's decision in *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290 (2021). RF, Tab 16. She argues that *Rodriguez* should compel the Board to reverse her removal as not in accordance with law. *Id.* at 4. The agency has filed a response to the appellant's submission, arguing that the present case is distinguishable from *Rodriguez.* RF, Tab 18.

## ANALYSIS

### The VA Accountability Act did not deprive the Board of jurisdiction over pending appeals.

¶12 The agency argues that the VA Accountability Act deprives the Board of jurisdiction to adjudicate the appeal further. RF, Tab 11 at 7-11. In determining whether a new statutory provision should be given retroactive effect, the Board applies the analytical framework set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). *King v. Department of the Air Force*, 119 M.S.P.R.

---

[2] The appellant does not challenge the administrative judge's findings regarding the charges.

[3] Because we agree with the agency that the administrative judge correctly decided the appeal on the record before him, we need not consider the agency's newly submitted evidence.

663, ¶ 8 (2013). Under *Landgraf*, when a case implicates a Federal statute enacted after the events at issue, we must first determine whether Congress explicitly prescribed in the statute that the provision at issue should be applied retroactively. 511 U.S. at 280. If the statute expressly states that the provision is retroactive, then our inquiry ends there. *Id.* If the statute does not expressly state that the provision is retroactive, then we must determine whether the retroactive application of the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If so, the provision does not apply retroactively absent clear congressional intent indicating otherwise. *Id.*[4]

¶13     We find that Congress did not expressly prescribe that section 201 of the VA Accountability Act would be retroactive. Congress has the ability to clearly express its intent for a statute to apply retroactively and has done so regarding other statutes. *See, e.g.*, 38 U.S.C. § 4324(c) (providing that the Board's jurisdiction to hear appeals under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) exists "without regard as to whether the complaint accrued before, on, or after October 13, 1994"); *Lapuh v. Merit Systems Protection Board*, 284 F.3d 1277, 1281-82 (Fed. Cir. 2002) (observing that Congress expressly provided for the Board's retroactive jurisdiction over claims brought under USERRA but did not do so with regard to veterans' preference claims under the Veterans Employment Opportunities Act of 1998 (VEOA)). In this case, however, Congress has not specifically provided for

---

[4] The Federal Circuit adopted a three-part test to examine the issue of whether a change in the law would have an impermissible effect if applied retroactively under *Landgraf*. *See Princess Cruises*, *Inc. v. United States*, 397 F.3d 1358, 1362-63 (Fed. Cir. 2005). Under that test, the court will consider the following factors: (1) "the nature and extent of the change of the law"; (2) "the degree of connection between the operation of the new rule and a relevant past event"; and (3) "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* Because we find that the *Landgraf* holding directly controls in this appeal, we do not apply the *Princess Cruises* test. However, even if we did, we would still find that the relevant portion of the VA Accountability Act is not retroactive. *See King*, 119 M.S.P.R. 663, ¶ 17 n.3.

an effective date of the provisions at issue. *See Sayers v. Department of Veterans Affairs*, [954 F.3d 1370](#), 1380 (Fed. Cir. 2020) (finding that the VA Accountability Act "lacks an unambiguous directive or express command that the statute is to be applied retroactively" (quotation marks and citations omitted)).

¶14      Having determined that the VA Accountability Act does not expressly state that it is retroactive, we must apply the second part of the *Landgraf* test to determine retroactivity. *See Sayers*, 954 F.3d at 1380-82 (applying *Landgraf* to examine whether section 202 of the VA Accountability Act had an impermissible retroactive effect because Congress did not express any intent as to whether the Act applied to preenactment conduct); *Wilson v. Department of Veterans Affairs*, [2022 MSPB 7](#), ¶ 27.[5]  We find that applying the VA Accountability Act would impair the review rights that the appellant was afforded after the Federal Circuit's decision in her appeal. *See Upshaw v. Consumer Product Safety Commission*, [111 M.S.P.R. 236](#), ¶ 10 (2009) (finding that new suitability regulations issued by the Office of Personnel Management could not be applied retroactively to exclude Board jurisdiction), *holding modified on other grounds by Scott v. Office of Personnel Management*, [116 M.S.P.R. 356](#) (2011).  Thus, we conclude that the portion of the VA Accountability Act that provides for a new grievance process

---

[5] In *Sayers*, the agency removed the appellant pursuant to section 202 of the VA Accountability Act, codified as amended at [38 U.S.C. § 714](#). *Sayers*, 954 F.3d at 1372. Section 202 authorizes the agency to "remove, demote, or suspend a covered individual" for inadequate performance or misconduct using an expedited process. 131 Stat. at 869-72; *Wilson*, [2022 MSPB 7](#), ¶¶ 11, 28.  Our reviewing court held that section 202 had an impermissible retroactive effect because its lowered substantial evidence standard of proof and elimination of the Board's authority to mitigate the penalty detrimentally affected the appellant's property right to continued employment and "substantive rights to relief from improper removal." *Sayers*, 954 F.3d at 1372 n.1, 1374, 1380‑81; *Wilson*, [2022 MSPB 7](#), ¶¶ 27-28.  In so finding, the court did not address whether section 201, the provision at issue here, had an impermissible retroactive effect, and thus, we consider it now.

and direct court review is not retroactive.[6] *See Lapuh*, 284 F.3d at 1280-82 (finding that 5 U.S.C. § 3330a(d)(1) did not retroactively provide for the Board's jurisdiction over allegations of a denial of veterans' preference that arose prior to the enactment of VEOA).

¶15 The general presumption against retroactivity does not necessarily apply to provisions that confer or strip jurisdiction. *Hamdan v. Rumsfeld*, 548 U.S. 557, 577 (2006); *see Landgraf*, 511 U.S. at 274 ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."). "That does not mean, however, that all jurisdiction-stripping provisions—or even all such provisions that truly lack retroactive effect—must apply to cases pending at the time of their enactment. '[N]ormal rules of construction, including a contextual reading of the statutory language, may dictate otherwise.'" *Hamdan*, 548 U.S. at 577 (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). Here, a contextual reading of section 201 of the VA Accountability Act leads us to conclude that it is intended to apply only to actions taken after its enactment and therefore it does not deprive the Board of jurisdiction over appeals, like the instant case, that were pending at the time of enactment.

¶16 The fact that the VA Accountability Act refers only to the ability of an affected senior executive to file a grievance or obtain judicial review and does not refer directly to the power of the Board provides support for reading the Act as applying only to future actions. *See Landgraf*, 511 U.S. at 275 n.29 ("Of course, the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old

---

[6] Nothing in the VA Accountability Act or elsewhere suggests that it constituted a clarification of an existing law. *Cf. Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 10-26 (2013).

regime.").[7] We are further persuaded by the fact that the VA Accountability Act does not provide for pending cases in any way. If we were to read the Act as removing the Board's jurisdiction over pending cases brought under the Choice Act, it would not be clear whether and under what conditions the appellant would still have the right to file a grievance or seek judicial review of her removal under the VA Accountability Act. If Congress had intended the post-removal procedures under VA Accountability Act to replace the Board appeals authorized under the Choice Act, even as to pending cases, it would be reasonable to expect that Congress might have specifically provided for such pending appeals.

¶17 Accordingly, we conclude that the VA Accountability Act does not deprive the Board of jurisdiction over appeals brought under the Choice Act.

The appellant has not established a due process violation or harmful procedural error.

¶18 The appellant's arguments regarding due process and harmful procedural error[8] are based primarily on her assertion that her removal was predetermined and that she therefore did not have a meaningful opportunity to respond to the proposal to remove her. She challenges the administrative judge's analysis on both factual and legal grounds. For the reasons that follow, we agree with the

---

[7] We do not doubt that Congress could deprive the Board of jurisdiction over pending appeals, if it had expressed clearly its intention to do so. *See Hallowell v. Commons*, 239 U.S. 506, 508-09 (1916) (holding that a statute making decisions of the Secretary of the Interior final and unreviewable required dismissal of a legal challenge to one such decision even though the challenge was within the courts' jurisdiction at the time of filing). Thus, if the VA Accountability Act had contained a separate provision indicating that the Board shall not have jurisdiction over appeals challenging actions under the Choice Act, we would have applied that provision to all pending cases.

[8] The appellant does not raise a separate claim of harmful procedural error based on distinct facts. Rather, she argues that the same facts that support her due process claim also establish harmful procedural error. RF, Tab 8 at 30.

administrative judge that the appellant has not established a due process violation or harmful procedural error.[9]

¶19   The appellant claims that, "[b]efore any investigations into [her] conduct concluded," President Obama, Secretary Shinseki, and the Deputy Secretary "all assured Congress and the public that [the appellant] would be removed." RF, Tab 8 at 21-22. However, the statements she cites in support of that claim do not establish that any of those individuals made such assurances. Specifically, the appellant cites a May 21, 2014 statement by President Obama in which he stated that anyone found to have falsified or manipulated records "has to be held accountable" but that "we have to let the investigators do their job and get to the bottom of what happened." IAF, Tab 36 at 11. The appellant also cites a May 30, 2014 news report quoting Secretary Shinseki as stating that he had initiated the process for the removal of senior leaders at the Phoenix VA medical center, as well as a statement the same day from President Obama reflecting Shinseki's statement. IAF, Tab 37 at 39, 41. The appellant also cites a June 30, 2014 statement by President Obama in which he stated that "those responsible for manipulating or falsifying records at the VA—and those who tolerated it—are being held accountable" and that "where we find misconduct, it will be punished." IAF, Tab 42 at 53. We find nothing in those statements reflecting a prejudgment of the appellant's individual case that would deprive her of a meaningful opportunity to respond to the charges against her. As to the May 30, 2014 statements by Secretary Shinseki and President Obama, we find that those statements merely reflect the fact that the agency had proposed the removal of

---

[9] The U.S. Court of Appeals for the Federal Circuit's and the Board's reasoning set forth herein rests on the decision of the U.S. Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39, 546-48 (1985), which held that a tenured public employee has a constitutionally protected property interest in ongoing public employment and that an agency may not deprive such an employee of his property interest without providing him with due process of law, including the right to advance notice of the charges against him, an explanation of the agency's evidence, and an opportunity to respond.

Phoenix VA officials, including the appellant. IAF, Tab 18 at 29-31. We find that such factual statements do not violate due process or constitute harmful procedural error. Whenever an agency proposes an employee's removal, it has made an initial determination that such action is warranted. Having made that initial determination cannot mean, however, that the agency has necessarily prejudged the final outcome[10] and that the employee does not have a meaningful opportunity to respond to the proposal.

¶20     We agree with the appellant that the test for whether a deciding official has so prejudged a case that his participation constitutes a denial of due process is an objective one. However, we disagree with the appellant's suggestion that due process requires that a deciding official must not have formed an opinion about the merits of the action. The cases the appellant cites for this proposition involve agency adjudications in which the individual is meant to be completely neutral. *See, e.g.*, *Cinderella Career and Finishing Schools*, *Inc. v. Federal Trade Commission*, 425 F.2d 583, 591 (D.C. Cir. 1970) ("The test for disqualification has been succinctly stated as being whether 'a disinterested observer may conclude that (the agency) has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.'") (quoting *Gilligan, Will and Co. v. Securities and Exchange Commission*, 267 F.2d 461, 469 (2nd Cir. 1959)). The deciding official in a personnel action, on the other hand, need not be a completely neutral third party. For example, the deciding official may be the same person who proposed the action. *DeSarno v. Department of Commerce*, 761 F.2d 657, 660 (Fed. Cir. 1985). "The law does not presume that a supervisor who proposes to remove an employee is incapable of changing his or her mind upon hearing the employee's side of the case." *Id.* Due process is satisfied as long as the record demonstrates that the deciding official "carefully considered

---

[10] The outcome of the specific proposed action referenced in the May 30, 2014 statements was not the appellant's removal but rather the rescission of the proposal. IAF, Tab 18 at 27.

the proffered evidence and conducted a full, impartial, and independent review of the charges at the pre-termination stage." *Id.* Additionally, the Board has held that, even when a deciding official was initially predisposed to decide against the appellant, the requirements of due process are satisfied when it is clear from the record that the deciding official was willing to change his mind and considered the record as a whole. *Teichmann v. Department of the Army*, 34 M.S.P.R. 447, 451-52 (1987), *aff'd*, 854 F.2d 1327 (Fed. Cir. 1988) (Table).

¶21    Here, the appellant argues that she was denied due process not necessarily because of anything the deciding official himself said or did, but rather because of pressure from individuals both inside and outside the agency, including members of Congress and the President, to remove the appellant. The administrative judge found that the agency was likely under political pressure to remove the appellant but that the Deputy Secretary nevertheless approached his role in good faith and considered the record as a whole. IAF, Tab 75 at 53-54. We agree and therefore find that the agency did not violate the appellant's due process rights.

¶22    The appellant raises several challenges to the administrative judge's findings regarding her due process claim. First, she argues that the Deputy Secretary's denial that he was not biased is not credible. RF, Tab 8 at 22. However, having reviewed the Deputy Secretary's sworn statement and the contrary evidence cited by the appellant, we agree with the administrative judge that the Deputy Secretary credibly explained how he considered the record as a whole and reached his decision to remove the appellant independent of any political pressure.[11]

---

[11] The appellant cites the Deputy Secretary's failure to deny specifically that he felt pressure from President Obama to remove the appellant. RF, Tab 8 at 22. However, we find that even if the Deputy Secretary felt a certain amount of pressure from the President, the mere existence of that pressure does not establish that the appellant was denied due process on the facts of this case showing that the Deputy Secretary approached his role in good faith and considered the record as a whole.

¶23     Next, the appellant argues that the agency violated her due process rights by replacing the deciding official assigned to her May 30, 2014 proposed removal. She asserts that the original deciding official had decided not to remove her. RF, Tab 8 at 24-26. She cites evidence in the form of 2016 testimony from the original deciding official in the Board appeal of another agency employee whose removal was originally proposed at the same time as the appellant's. *Id.* In the newly submitted testimony, the original deciding official testified that he took no action on the proposed removal regarding the other employee because he had requested supporting documentation for the interim Inspector General report on which the proposal was based, but he had not received that documentation. *Id.* at 54-56. He later learned that the Deputy Secretary had removed the employee. *Id.* at 56.

¶24     Even if we agreed with the appellant that this evidence is "new," i.e., it was unavailable before the close of the record below,[12] we find that it is not material. *See* 5 C.F.R. § 1201.115(d). The Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). An agency commits procedural error when it replaces a properly authorized deciding official who has already considered an employee's reply to a proposed adverse action and arrived at a decision. *Cheney v. Department of Justice*, 720 F.2d 1280, 1281, 1285 (Fed. Cir. 1983); *Shiflett v. Department of Justice*, 98 M.S.P.R. 289, ¶ 9 (2005). Although the original deciding official expressed concerns about the evidence before him,

---

[12] The appellant argues that the evidence is per se "new" because the testimony in question was taken after the close of the record before the administrative judge. RF, Tab 8 at 25. However, to constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed. *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989); 5 C.F.R. § 1201.115(d). Thus, the date of the testimony itself is not determinative.

he never testified that he had made a final determination that removal of either the appellant or the other employee was not warranted. Thus, even if the testimony in another case could be applied to the appellant's case, the newly submitted evidence does not establish that the decision to replace the original deciding official with the Deputy Secretary constituted procedural error or a due process violation. *See Helms v. Department of the Army*, 114 M.S.P.R. 447, ¶ 7 (2010).

¶25    The appellant further argues that the administrative judge failed to consider the fact that the Deputy Secretary proposed and sustained charges and specifications against her that were not proven as evidence that the result in her case was predetermined. RF, Tab 8 at 26-28. However, the administrative judge explicitly considered and rejected that argument, finding that the defeat of certain charges and specifications was not "particularly probative" of whether the deciding official was fair and impartial. IAF, Tab 75 at 56. We agree with the administrative judge. Although the agency failed to prove certain charges and specifications, we are not persuaded that the agency brought those charges and specifications in bad faith or without a reasonable basis.[13]

¶26    Finally, the appellant argues that the administrative judge misapplied its precedent in *Blake v. Department of Justice*, 81 M.S.P.R. 394 (1999). RF, Tab 8 at 28-30. Specifically, she cites the following language from the Board's decision in *Blake*:

> Proven, unveiled threats from someone wholly outside the chain of accountability within the Executive Branch, who is arguably in a position to adversely affect the careers of decision-makers or the welfare of the agency involved for reasons antithetical to the assurance and administration of merit systems principles, will necessarily be subjected to the closest scrutiny.

---

[13] In the case cited by the appellant in support of this argument, the charges against the employee were "fabrications" that the officials involved in the removal knew to be false. *See Bettio v. Village of Northfield*, 775 F. Supp. 1545, 1564-65 (N.D. Ohio 1991). The appellant has made no similar showing here.

81 M.S.P.R. 394, ¶ 37 n.11. However, the close scrutiny suggested by the Board in *Blake* does not mean that a due process violation occurs whenever a member of Congress or other official exerts pressure on the agency to take a particular action. In *Blake* itself, for example, the Board held that, even if a Congressman had communicated that the agency would "have trouble" with him if it failed to impose recommended discipline, there was no procedural error when the deciding official provided an unwavering statement denying that he was influenced by the Congressman's threat and there was no other evidence in the record to show such influence. *Id.*, ¶¶ 36-37. Here, there were multiple statements from members of Congress and other officials calling for the appellant's removal. However, the Deputy Secretary credibly denied that he was influenced by those statements and the record as a whole does not contradict his statement. We therefore conclude that the administrative judge's decision was consistent with *Blake*.[14]

The Federal Circuit's decision in *Rodriguez* does not compel a different outcome.

¶27        The appellant argues that *Rodriguez* compels the Board to reverse her removal. RF, Tab 16. Although the appellant's submission regarding *Rodriguez* was filed after the close of the record, we will consider both the appellant's submission and the agency's response because they deal with issues that are relevant to this appeal. *Brown v. Department of Health and Human Services*, 42 M.S.P.R. 291, 295 n.4 (1989). The Federal Circuit's precedent in *Rodriguez* applies to all pending cases, regardless of when the events at issue took place. *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 22. Nevertheless,

---

[14] The other case cited by the appellant, *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982), is distinguishable from the present case. In *Ciechon*, the city promised prior to the employee's disciplinary hearing that she would be dismissed. *Id.* at 518. The city then followed through on that promise despite the fact that the charges were "unsupported by the evidence" and the initial investigation had not recommended the employee's dismissal. *Id.* at 521. Here, the agency never specifically promised that the appellant would be removed and, although it failed to prove some charges and specifications, the action as a whole was supported by the evidence.

for the reasons set forth below, we find that *Rodriguez* does not compel a different outcome in this appeal.

¶28        *Rodriguez* involved an action taken under 38 U.S.C. § 714, a provision enacted as part of the VA Accountability Act. *Rodriguez*, 8 F.4th at 1295. The Federal Circuit in *Rodriguez* found in relevant part that the Board misinterpreted that provision by ruling that "substantial evidence" is the proper standard for the agency to apply in determining whether an employee has engaged in misconduct that justifies discipline. *Id.* at 1297. The court found that although the VA Accountability Act provides that the agency is only required to prove its case before the Board by substantial evidence, the agency must apply a preponderant evidence standard in determining whether the charges against the appellant are proven. *Id.* at 1297-1301. The court noted the following factors in finding that remand was required for application of the preponderant evidence standard: (1) The agency's position, taken both in litigation and in its internal guidance, was that substantial evidence was the proper burden of proof for the agency's determination; (2) the deciding official appeared to apply the substantial evidence standard when resolving the disputed facts and selecting a penalty; and (3) the administrative judge found that substantial evidence was the appropriate burden of proof for the agency. *Id.* at 1297-98.

¶29        There are important legal and factual distinctions between *Rodriguez* and the present case. As to legal distinctions, neither the Choice Act provision at issue here nor the VA Accountability Act provision at issue in *Rodriguez* specifically addresses the agency's burden of proof in making its initial disciplinary determination. However, whereas the VA Accountability Act specifically provides that the Board should review the agency's determinations under a substantial evidence standard, 38 U.S.C. § 714(d)(2)(A), (3)(B), the Board's regulations implementing the Choice Act provide that the agency's decision "shall be sustained only if the factual reasons for the charge(s) are supported by a preponderance of the evidence." 5 C.F.R. § 1210.18(a). Thus, the

agency was on notice in this case that it needed at least preponderant evidence in support of its charges to survive a challenge under the Choice Act.

¶30    Factually, the deciding official here stated in a sworn declaration before the administrative judge that he had determined that the charges "were supported by a preponderance of the evidence."[15]  RF, Tab 71 at 59.  By contrast, the deciding official in *Rodriguez* stated in the decision notice that the charges "were supported by substantial evidence."  *Rodriguez*, 8 F.4th at 1297.  Additionally, the administrative judge in *Rodriguez* specifically found that the agency's determination was subject to a substantial evidence standard, *id.* at 1298, whereas the administrative judge here made no such finding; his only reference to the burden of proof was his finding that the agency was required to prove its charges before the Board by preponderant evidence.  ID at 11 (citing 5 C.F.R. § 1210.18).

¶31    We therefore find that both the deciding official and the administrative judge applied a preponderant evidence standard to the agency's charges.  Accordingly, there is no need for a remand to remedy the incorrect application of the substantial evidence standard as was the case in *Rodriguez*.

The appellant has not shown that the penalty of removal was unreasonable.

¶32    The Board's regulations governing appeals brought under section 707 of the Choice Act provide that proof of the agency's charges by preponderant evidence creates a presumption that the Secretary's decision was warranted.  5 C.F.R. § 1210.18(d).  An appellant may rebut that presumption by establishing that the imposed penalty was unreasonable under the circumstances of the case.  *Id.*  We find that the appellant has not rebutted that presumption and that her removal was therefore warranted.

---

[15] As the appellant correctly notes, the agency's internal guidance in effect at the time of her removal provided that a deciding official in an action against a Senior Executive "shall determine whether substantial evidence supports the charge(s). . ."  RF, Tab 28 at 12.  However, the evidence does not support a finding that the deciding official here applied that lower standard.

¶33    First, the appellant argues that the administrative judge erred in failing to sanction the agency for its failure to respond adequately to her discovery requests regarding possible comparators. She argues that the Board should correct that error by making an adverse inference against the agency and finding that it treated her more harshly than other employees who engaged in the same misconduct. RF, Tab 8 at 31-32. However, we find that no such adverse inference is appropriate here.

¶34    Among the appellant's discovery requests were interrogatories seeking the identity of other senior agency employees who had been charged in the prior 5 years with (1) failure to report gifts on a financial disclosure form and (2) misconduct relating to whether the employee knew or should have known that a personnel action taken on a subordinate employee could be perceived as retaliation. IAF, Tab 61 at 28. In response to the appellant's motion to compel, the administrative judge ordered the agency to fully respond to those interrogatories as to all Senior Executive Service employees and GS-15 Medical Center Directors. IAF, Tab 66 at 4. The agency responded that no such senior officials had been charged with either offense during that period. IAF, Tab 70 at 102. In his decision, the administrative judge noted "issues with the agency's discovery responses," but he determined that drawing adverse inferences against the agency for its discovery responses was not justified given the novelty and speed of the Board proceedings under section 707 of the Choice Act. IAF, Tab 75 at 2.

¶35    An administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion the Board will not find reversible error in such rulings. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016). We find that the administrative judge's decision not to draw an adverse inference or impose other sanctions against the agency was within his broad discretion. Although he found that there were issues with the agency's discovery responses in general, the administrative judge did not identify any particular issue with the

agency's responses regarding potential comparators, and the appellant has not demonstrated that those responses were inaccurate or incomplete. We therefore find that no adverse inference should be drawn against the agency regarding alleged disparate treatment.[16]

¶36 In analyzing the penalty relative to the proven charges and specifications, the administrative judge found that the most serious proven misconduct was the appellant's acceptance of and failure to report gifts from a consultant to a healthcare provider that was seeking to conduct business with the agency. IAF, Tab 75 at 58. He found that the appellant's acceptance of thousands of dollars in gifts was particularly serious because of the appellant's senior position and the appearance of a conflict of interest created by those gifts. *Id.* at 58-59. He further found that the appellant's misconduct was more likely than not intentional. *Id.* at 59. In addition, he found that the appellant was on clear notice that her failure to report gifts was actionable misconduct and that her response to the charges against her did not demonstrate potential for rehabilitation.[17] *Id.* at 60-61. Ultimately, the administrative judge found that those factors outweighed the appellant's contention that she had a long record of blemish-free

---

[16] Apart from her argument that an adverse inference should be drawn regarding disparate treatment, the appellant also asserts that the record shows she was treated more harshly than other employees. Specifically, she cites the agency's failure to remove another medical center director whom it had charged with failure to provide effective oversight. RF, Tab 8 at 33 n.22. However, we find that the agency's failure to remove another employee based on one of the three charges brought against the appellant is not itself sufficient to establish disparate treatment or to overcome the presumption that the appellant's removal was warranted. *See Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 18 (reiterating that the consistency of the penalty is just one of many relevant factors in determining an appropriate penalty).

[17] The appellant argues that the administrative judge's findings regarding her rehabilitative potential constituted an improper adverse inference based on the invocation of her privilege against self-incrimination. RF, Tab 8 at 34. The administrative judge indicated that he would not draw such an inference. IAF, Tab 75 at 2. However, because the appellant has the burden of proof as to penalty, merely noting the absence of evidence that could demonstrate rehabilitative potential does not constitute drawing an adverse inference.

Federal service, the lack of notoriety in connection with the proven misconduct, and her complaints about the propriety of the agency's investigation that resulted in her removal. *Id.* at 59-61.

¶37    We find that the administrative judge properly analyzed the relevant factors and correctly determined that the appellant failed to overcome the presumption that her removal was warranted. We therefore affirm the decision of the administrative judge.

## NOTICE OF APPEAL RIGHTS[18]

The decision of the administrative judge, as supplemented by this Final Order, constitutes the Board's final decision in this matter. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[18] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

(1) **Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[19] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

---

[19] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.